IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY PEZZA<br>2656 Lacey Road<br>Forked River, NJ 08731<br><br>Plaintiff,<br>v.<br><br>LANDSCAPE MAINTENANCE<br>SERVICES, INC.<br>491 Amwell Road, Suite 100<br>Hillsborough Township, NJ 08844<br><br>Defendant. | CIVIL ACTION<br><br>DOCKET NO.:<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Anthony Pezza (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against Landscape Maintenance Services, Inc. (*hereinafter* referred to as "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Fair Labor Standards Act ("FLSA" - 29 U.S.C. § 201 *et. seq*.), the New Jersey Law Against Discrimination ("NJ LAD"), the New Jersey Wage and Hour Law ("NJ WHL" – N.J.S.A. § 34:11-56a, *et seq*.), and the New Jersey Conscientious Employee Protection Act ("CEPA" – N.J.S.A. 34:19-1 *et. seq*.)[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff intends to amend his complaint to include disability discrimination and retaliation claims under the ADA once his claims have been administratively exhausted with the Equal Employment Opportunity Commission ("EEOC") and the EEOC issues a right-to-sue letter.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the District of New Jersey.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Landscape Maintenance Services, Inc. provides regional and state-wide landscaping, lawn and ground maintenance, landscape construction, irrigation, and seasonal snow removal services residentially and commercially, with an address as set forth in the above-caption.

8. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

**FACTUAL BACKGROUND**

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff was employed by Defendant for approximately 2.5 years, from in or about October of 2017 until his unlawful termination (discussed further *infra*) on or about April 27, 2020.

11. Throughout Plaintiff's tenure with Defendant, he performed maintenance and repairs on vehicles and equipment utilized by Defendant.

12. Defendant has multiple locations and is headquartered in Hillsborough Township, New Jersey; however, Plaintiff physically worked within Defendant's Jackson, New Jersey location.

13. At the time of Plaintiff's termination, he was generally supervised by Steven Roy (*hereinafter* "Roy") (functionally the Workshop Foreman) and Facility Manager, Walt (last name unknown, *hereinafter* "Walt").

14. Throughout his employment with Defendant, Plaintiff was a hard-working employee who performed his job well.

15. Beginning in or about 2018, Plaintiff has suffered from serious health conditions, including but not limited to cardiac and heart-related conditions (and accompanying complications).

16. As a result of his aforesaid serious health conditions, Plaintiff endured a heart attack in or about October of 2018, suffers from coronary artery disease, experienced a 98% collapse in a major artery, and his heart – at best – operates at around 52% of necessary capacity, which limited his ability (at times) to perform some daily life activities, including but not limited to lifting, walking, and working (among other daily life activities).

17. Despite his aforementioned health conditions and limitations, Plaintiff was still able to perform the essential duties of his job well with Defendant; however, Plaintiff did require some very easy and non-burdensome accommodations such as intermittent time off from work (infrequently), breaks, and where possible, low stress-environments, and a medical leave of absence beginning on or about March 24, 2020 (and discussed further *infra*).

18. After Plaintiff apprised Defendant's management of his serious health conditions and/or the need for reasonable medical accommodations, Defendant's management subjected Plaintiff to significant discrimination and retaliation leading up to his medical leave. By way of example, but not intended to be an exhaustive list:

   a. Walt and Roy treated Plaintiff in a condescending and demeaning manner, and regularly talked down to him;

   b. Walt and Roy excessively followed Plaintiff around and overly scrutinized and criticized his work;

   c. At times, Plaintiff needed the reasonable accommodation of stepping away from work to get a few minutes of fresh air or to let his heart rate normalize; however, on at least 10 occasions, Walt would come over to Plaintiff, yell at him, tell him not to sit down or take any breaks, and informed him that he didn't care about Plaintiff's heart issues (as he knew from Plaintiff's statements why he took the periodic breaks); and

   d. Plaintiff had asked management, due to his need to have low stress and avoid another heart attack, to speak in normal, non-yelling voices; however, instead of accommodating Plaintiff (who could easily perform the duties of his job but was supposed to avoid high-stress inducing environments), Walt and Roy were

point-blank abusive – consistently screaming in the workplace and calling Plaintiff and other employees morons, stupid, fools, idiots, and other offensive names.

19. After being subjected to the aforementioned instances of disability discrimination, harassment, and retaliation for months, on or about March 24, 2020, Plaintiff commenced a medical leave prompted by 2 separate medical concerns (1) heart-related complications; and (2) as a separate accommodation, to be quarantined due the coronavirus.

20. Due to the COVID-19 pandemic, Plaintiff experienced a little lag time in obtaining medical documentation for Defendant; however, on or about April 9, 2020, Plaintiff provided Defendant with a medical note from his physician stating: *"Pt has cardiac conditions that should limit his exposure to others due to COVID-19. Please allow self-quarantine as virus progresses."*

21. Plaintiff's aforesaid medical leave (*see* Paragraph 20, *supra*) was identified by Plaintiff's physician in the same medical note, as only needing to last for up to an additional 4 weeks (until approximately mid-to-late April of 2020) – a reasonable accommodation under the NJ LAD.

22. However, instead of accommodating Plaintiff's very reasonable 5-6-week medical leave, Plaintiff was abruptly terminated by Roy via text on or about April 27, 2020. In an effort to obtain more information regarding his termination, Plaintiff contacted Walt, who, along with Roy, informed Plaintiff that he was being terminated for negligence and/or poor repairs Plaintiff allegedly made prior to his medical leave (among other false allegations about Plaintiff's alleged pre-medical leave work/conduct).

23. Defendant's aforesaid purported reason for Plaintiff's termination is completely false and pretextual because (1) Plaintiff worked hard for Defendant and performed his job well;

(2) Plaintiff was pressured by Walt and Roy to return to work earlier than the expiration of medical leave, which is inconsistent with Plaintiff supposedly being a bad performer prior to his medical leave; (3) Plaintiff has not been the recipient of any progressive warnings or discipline prior to his termination; (4) Plaintiff was subjected to animosity and hostility after apprising Defendant of his serious health conditions and need for accommodations through disparate treatment, pretextual admonishment, harassing and demeaning comments/behavior, and Defendant's failure to accommodate Plaintiff's very reasonable accommodations (i.e. breaks and non-yelling, low-stress environment); and (5) Plaintiff was terminated in close proximity to his requests for and/or utilization of medical accommodations.

24. Following his termination, when Plaintiff explained that he was going to seek the assistance of a lawyer regarding his unlawful termination, Walt contacted Plaintiff, referred to him as a "Fucking Russian Jew" who only wants money, and threatened him he better "shut the fuck up," and "keep [his] mouth shut," or he "would have another thing coming."

### -Overtime/Wage Violations-

25. In addition to being subjected to discrimination and retaliation because of his disabilities and requests for reasonable medical accommodations, Plaintiff was also not paid in accordance with state and federal overtime/wage laws.

26. At all times relevant during Plaintiff's employment with Defendant, Plaintiff was a non-exempt employee who was paid an hourly rate.

27. Throughout his tenure with Defendant, Plaintiff often worked approximately 5-20 hours of overtime per week from the time he started working for Defendant.

28. For every hour that he worked, Plaintiff was only paid $15.00 per hour and was rarely paid[2] any wages (including overtime wages at a rate of time and one half) for any hours that he worked over 40 in one week, as required by state and federal wage and hour laws.

29. Defendant knew that Plaintiff was unequivocally a non-exempt employee who should have been paid overtime for all hours worked over 40 hours per week at a rate of time and one half.

30. All of Defendant's actions as aforesaid are without question willful, intentional and in blatant disregard for state and federal laws, as evidenced by:

   a) Defendant's failure to pay Plaintiff any wages for all hours that he worked over 40 in a single work week; and

   b) Defendant's failure to pay Plaintiff overtime compensation (at a rate of time and one half) for all hours worked in excess of 40 hours a week;

31. Plaintiff objected to and complained about Defendant's aforesaid illegal pay practices on several occasions to both Roy and Walt, the most recent of which occurred in or about the beginning of March of 2020.

32. In response to Plaintiff's aforesaid complaints of unlawful pay practices/overtime violations, Defendant's management informed Plaintiff that they were "not going to go through and calculate everyone's possible overtime each week" (suggesting that Plaintiff should be happy with 40 hours of pay and his job in general).

---

[2] Defendant randomly paid Plaintiff some overtime wages on a few occasions during summer months when Defendant was extremely busy; however, Defendant failed to compensate Plaintiff for the majority of the hours he worked over 40 each week of his tenure with Defendant.

33. Despite Plaintiff's aforesaid complaints regarding Defendant's unlawful pay practices, Defendant's management never remedied Plaintiff's concerns or compensated him for wages that were (and still are) due and owed to him.

34. In close proximity to Plaintiff's last complaint to Defendant's management regarding Defendant's overtime and wage violations, Plaintiff was abruptly terminated on or about April 27, 2020, for pretextual reasons.

35. Plaintiff believes and therefore avers that he was terminated in retaliation for having complained of Defendant's overtime and wage violations under state and federal law.

36. All of Defendant's actions as aforesaid are without question willful, intentional and in blatant disregard for state and federal laws.[3]

**COUNT I**
**Violation of the New Jersey Law Against Discrimination (NJ LAD)**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment; and [4] Failure to Accommodate)**

37. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38. Plaintiff suffered from qualifying health conditions under the NJ LAD which affected his ability (at times) to perform some daily life activities, including but not limited to lifting, walking, and working (among other daily life activities).

39. Plaintiff kept Defendant's management informed of his serious medical conditions and need for medical treatment and other accommodations.

---

[3] While not raised as separate claims herein but purely to demonstrate why punitive damages are warranted for Defendant's knowing and willful violation of several state and federal laws (including those set forth *herein*), Defendant has also engaged in violations of the Environmental Protection Act ("EPA") with improper disposal of chemicals as well as violations of Department of Transportation ("DOT") Standards by operating trailers/vehicles unsafely on roadways with poor/improper repairs.

40. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant; however, Plaintiff did require reasonable accommodations at times.

41. Plaintiff requested very easy and non-burdensome accommodations from Defendant, including but not intermittent time off from work (infrequently), breaks, low stress-environments where possible, and a medical leave of absence.

42. Plaintiff was subjected to hostility and animosity due to his health and/or requests for accommodations through demeaning and/or discriminatory treatment towards him (as discussed *supra*).

43. Plaintiff was abruptly terminated on or about April 27, 2020 from his employment with Defendant in close proximity to his requests for/utilization of reasonable accommodations and while still out on medical leave.

44. Prior to abruptly terminating Plaintiff, Defendant failed to (1) properly accommodate Plaintiff's very reasonable medical requests for quick breaks (for fresh air and to let his heart rate normalize) and a non-yelling/non-abusive low-stress environments; and (2) keep his position open during his approximate 5-6-week medical leave.

45. Plaintiff believes and therefore avers that he was subjected to a hostile work environment and terminated because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations (discussed *supra*); and/or (4) Defendant's failure to properly accommodate his health conditions (discussed *supra*).

46. These actions aforesaid constitute violations of the NJ LAD.

## COUNT II
### Violations of the Fair Labor Standards Act ("FLSA")
**(Failure to Pay Overtime Wages & Retaliation)**

47. The foregoing paragraphs are incorporated herein as if set forth in full.

48. At all times relevant herein, Defendant, has and continues to be, an "employer" within the meaning of the FLSA.

49. The FLSA requires covered employers, such as Defendant, to minimally compensate their "non-exempt" employees, such as Plaintiff, at a rate of 1.5 times the employee's regular rate of pay for each overtime hour that the employee works in excess of 40 hours in a workweek.

50. At all times relevant herein, Plaintiff was a non-exempt "employee" within the meaning of the FLSA.

51. Defendant knew that Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

52. Defendant failed to pay Plaintiff proper overtime compensation for all hours that he worked over 40 hours in one week.

53. Plaintiff expressly complained to Defendant's management about non-payment of overtime compensation.

54. Defendant retaliated against Plaintiff by continually failing to pay him overtime hours and ultimately terminating Plaintiff in substantial part because of his complaints to Defendant regarding its failure to pay him overtime wages.

55. As a result of Defendant's failure to pay Plaintiff the overtime compensation due him, Defendant violated the FLSA and caused Plaintiff to suffer damages in the form of unpaid overtime compensation.

56. Any retaliation against Plaintiff for exercising his statutory rights to complain of unpaid overtime was *per se* unlawful. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 15 (2011) (it is illegal under the FLSA to retaliate against an employee for verbal <u>or</u> written concerns of unpaid overtime compensation).

### COUNT III
### Violations of the NJ WHL & NJ WPL
### (Unpaid Overtime Compensation & Wages)

57. The foregoing paragraphs are incorporated herein as if set forth in full.

58. At all times relevant herein, Defendant, has and continues to be, an "employer" within the meaning of the NJ WHL.

59. At all times relevant herein, Plaintiff was a non-exempt "employee" within the meaning of the NJ WHL.

60. The NJ WHL requires covered employers, such as Defendant, to minimally compensate their "non-exempt" employees, such as Plaintiff, at a rate of 1.5 times the employee's regular rate of pay for each overtime hour that the employee works (*i.e.* hours in excess of 40 hours in a workweek).

61. Defendant knew that Plaintiff was a "non-exempt" employee within the meaning of the NJ WHL.

62. Defendant failed to pay Plaintiff proper overtime compensation for all of the hours that he worked over 40 hours in one week.

63. Defendant also failed to pay Plaintiff his regular hourly rate for all of the hours worked during his employment.

64. Plaintiff expressly complained to Defendant's management about non-payment of overtime compensation.

11

65. Defendant retaliated against Plaintiff by continually failing to pay him overtime hours and ultimately terminating Plaintiff in substantial part for and in close proximity to his complaints to Defendant regarding its failure to pay him overtime wages.

66. Plaintiff is entitled to all statutory damages and enhancements consistent with the New Jersey Wage Payment Law(s) including, but not limited to, the statutory penalties defined in N.J.S.A. § 34:11-4.10.

67. Pursuant to N.J.S.A. § 34:11-4.10(c), as a result of Plaintiff's retaliatory discharge for his aforesaid complaints of overtime and wage violations, Plaintiff "may recover in a civil action the full amount of any wages due, or any wages lost because of any retaliatory action taken in violation of subsection a. of this section, plus an amount of liquidated damages equal to not more than 200 percent of the wages lost or of the wages due, together with costs and reasonable attorney's fees as are allowed by the court." Moreover, "the employer shall also be required to offer reinstatement in employment to the discharged employee and take other actions as needed to correct the retaliatory action."

68. As a result of Defendant's failure to pay Plaintiff the overtime compensation and all wages due him, Defendant has violated the NJ WHL and NJ WPL and has caused Plaintiff to suffer damages in the form of unpaid wages and overtime compensation.

**COUNT IV**
**Violations of the New Jersey Conscientious Employee Protection Act ("CEPA")**
**(Wrongful Termination & Retaliation)**

69. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70. Plaintiff was terminated for several instances of engaging in protected activity by making complaints and/or for objecting to Defendant's unlawful pay practices in the workplace (discussed *supra*).

71. These actions as aforesaid constitute violations of CEPA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F. Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

G.  Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

                                                  Respectfully submitted,

                                            **KARPF, KARPF & CERUTTI, P.C.**

By: _____
                                       Ari R. Karpf, Esq.
                                       3331 Street Rd.
                                       Two Greenwood Square, Suite 128
                                       Bensalem, PA 19020
                                       (215) 639-0801

Dated:  May 27, 2020